# Ballard Spahr
LLP

————————————————

1675 Broadway, 19th Floor
New York, NY 10019-5820
TEL 212.223.0200
FAX 212.223.1942
www.ballardspahr.com

Jacquelyn Schell
Tel: 646.446.8048
Fax: 212.223.1942
SchellJ@ballardspahr.com

November 1, 2024

*By Electronic Filing*

The Honorable Sarah Netburn
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

Re:    *In re Paramount Global, et al.,* Case No. 1:24-mc-432-RA-SN

Dear Judge Netburn:

    Despite two months of meet and confer conversations and motions practice, Plaintiffs still have not identified what, exactly, they seek from the Non-Parties or articulated why the Non-Parties' unaired footage and communications are relevant or proportional to the needs of their case. They also have not made *any* effort to narrow their Subpoenas. As they cannot meet the baseline requirements of Rules 26 and 45, Plaintiffs have failed entirely to show that the requested materials are of "likely relevance to a *significant* issue" and not obtainable elsewhere, as required to overcome the reporter's privilege that protects the information sought from compelled disclosure. The Court should grant the Non-Parties motion and award the Non-Parties their costs and attorneys' fees pursuant to Rule 45(d)(1).

    Courts have "broad discretion to manage the manner in which discovery proceeds." *In re Subpoena Issued to Dennis Friedman,* 350 F.3d 65, 69 (2d Cir. 2003). But Courts must limit discovery that is "outside the scope" of Rule 26(b)(1), which allows discovery "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(2)(C); *see Emergency Physician Servs. of N.Y. v. UnitedHealth Grp., Inc.,* 2023 WL 3160115, at *1 (S.D.N.Y. Apr. 28, 2023) (denying motion to compel discovery that was not "relevant to the issues, claims, or defenses" or "proportional to the needs of the case").

    These principles apply with special force to non-party subpoenas. Rule 45 requires that attorneys issuing non-party subpoenas "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Courts reviewing non-party subpoenas "shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction" for failing to do so. *Prescient Acquisition Grp., Inc. v. MJ Publ'g Tr.,* 2006 WL 2996645, at *1 (S.D.N.Y. Oct. 13, 2006). Rule 45 also requires that courts "be generally sensitive to costs imposed on non-parties." *In re Terrorist Attacks on September 11, 2001,* 523 F. Supp. 3d 478, 489 (S.D.N.Y. 2021). It directs courts to "protect" non-parties from the "significant expense" associated with non-party discovery. *Id.* Thus, even where discovery might be proper as against a party, it might be improper as against a non-party. *Id.* at 489-90

The Honorable Sarah Netburn
November 1, 2024
Page 2

(considerations include whether the information can be obtained from "less burdensome" or "more convenient" sources and whether subpoena exceeds the scope of Rule 26(b)(1)).

***For the First Time in More than Two Months, Plaintiffs Identify Episodes Allegedly Relevant to the Underlying Lawsuit.*** At the outset, Plaintiffs criticize the Non-Parties for objecting outright to the Subpoenas, rather than producing the as-broadcast episodes. But Plaintiffs have never explained why all episodes would be relevant, despite repeated requests from the Non-Parties aimed at narrowing the dispute. Plaintiffs indiscriminately demanded "All video and interview footage filmed for use in the documentary series *De La Calle*, whether it appeared in the documentary series or not." Non-Parties Sept. 18, 2024 Ltr. at Exs. A, B (Dkt.1). By refusing to substantively engage with the Non-Parties to move this matter towards a resolution, Plaintiffs also ignored their obligation under Rule 45 to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Against this backdrop, the Non-Parties had no choice but to seek relief from this Court.

Now that Plaintiffs have finally identified the specific, allegedly relevant episodes, the Non-Parties will produce as-broadcast copies of Episodes 2 and 3. If it will avoid the need for a deposition, the Non-Parties will be happy to provide a custodian declaration. The Non-Parties otherwise object to the production of other episodes that Plaintiff has *never* alleged to be relevant to the underlying claim.

***Plaintiffs Fundamentally Misunderstand Their Obligations under Rules 26 and 45.*** Even after identifying only two, arguably relevant episodes, Plaintiffs continue to demand that the Non-Parties disclose all privileged, *unpublished* footage from those episodes and all of the other episodes, too, without making any effort to demonstrate their relevance. Plaintiffs' suggestion that the burden is on the Non-Parties to offer proposed limitations, *see* Opp. at 2 (Dkt. 13), evinces a serious misunderstanding Rules 26 and 45. "The party seeking discovery has the initial burden of proving the requested material is relevant and proportional to the needs of the case." *In re Terrorist Attacks on Sept. 11, 2001*, 2023 U.S. Dist. LEXIS 119255, at *1725 (S.D.N.Y. July 11, 2023) (cleaned up). While relevance is broad, the propounding party "must 'make a prima facie showing that the discovery sought is more than a mere fishing expedition.'" *Id.* This is the propounding party's burden to carry—not a non-party's burden.

Here, Plaintiffs have completely failed to carry this burden. Plaintiffs have simply demanded "[a]ll video and interview footage filmed for use in the documentary series *De La Calle*," without making *any* showing of relevance as to that footage. This is the archetypal fishing expedition against which Rules 26 and 45 protect. *See, e.g.*, *Alcon Vision, LLC v. Allied Vision Grp., Inc.*, 2019 U.S. Dist. LEXIS 152073, at *7 (S.D.N.Y. Sept. 6, 2019) (quashing non-party subpoena that sought "[a]ll Documents" in connection to several topics as overbroad and thus unduly burdensome); *Gropper v. David Ellis Real Estate, L.P.*, 2014 U.S. Dist. LEXIS 16849, at *11 (S.D.N.Y. Feb. 10, 2014) (noting that a "request for 'any and all' documents concerning that subject is inherently overbroad").

The only foundation Plaintiffs provide for seeking all published and unpublished footage is that *De La Calle* contains an interview with a defendant in the underlying case, "Nicky Jam," and a separate reference to a sound recording owned by Plaintiffs. Opp. at 2. That is all Plaintiffs say. Plaintiffs make no effort at all to tie that interview to a matter in issue in the underlying

The Honorable Sarah Netburn
November 1, 2024
Page 3

copyright case. They do not even identify particular, aired statements by Nicky Jam or argue
why, in light of those (unidentified) statements, they claim the unpublished footage of that
interview might contain relevant and proportional information. To be sure, Plaintiffs spend much
of their letter regurgitating the elements of a copyright claim, but they never explain why they
have any reason to believe Nicky Jam's interview is relevant to proving those elements.

Even more egregious, Plaintiffs have made no effort to explain why that interview or a
passing reference to their song would render the entirety of the aired and unaired footage from all
eight episodes relevant and proportion to the needs of their case. Instead, they simply insist that
they are entitled to everything. If this were the test—if any passing reference to a litigant or a
work in a copyright case were enough—any documentary relating, however generally, to the
subject matter of a later litigation would be subject to the wholesale disclosure of records.
Plaintiffs cite no case for that proposition because none exists. *See, e.g.*, *United States v. Shah*,
No. 19 CR. 833 (SHS), 2022 WL 1422252, at **2-3 (S.D.N.Y. May 5, 2022) (subpoena that
asked ABC News "to search for and produce all files of all persons who worked on the
documentary and produce a large volume of material" was overly burdensome and propounded
for the "impermissible purpose of allowing Shah to sift through press files in search of
information supporting her defense" (cleaned up)).

In short, Plaintiffs had the initial burden of showing relevancy, and they have not done
so. To this day, they indiscriminately demand all unpublished footage from all episodes of *De La
Calle*, without making any effort to explain why it is relevant or proportional to their case. For
these reasons, the Subpoenas should be quashed.

**_Rather than Attempt to Overcome the Reporter's Privilege, Plaintiffs Misconstrue the
Law and Facts._** Much like they misunderstand Rules 26 and 45, Plaintiffs misconstrue the
reporter's privilege and fail to carry their burden of overcoming it. As an initial matter, the
reporter's privilege undisputedly applies to documentaries. *Shah*, 2022 WL 1422252, at *2
(quashing non-party subpoena seeking unaired footage from documentary filmmaker); *In re
McCray, Richardson, Santana, Wise, Salaam Litig.* ("*McCray*"), 991 F. Supp. 2d 464, 469
(S.D.N.Y. 2013) (same).[1] Here, *De La Calle* is undisputedly a documentary series, so there can
be no real dispute as to whether the privilege applies. Opp. at 2 (describing *De La Calle* as "a
music documentary … about the history, tradition, and features of, among other genres,
Reggaeton").[2] Plaintiffs seem to suggest that the reporter's privilege does not apply here because
*De La Calle* "was for entertainment purposes," Opp. at 3, but they can cite no authority for this
proposition because it does not exist. *accord In re Home Box Office, Inc. (Laster)*, 64 Misc. 3d

---

[1] Contrary to Plaintiffs' view, this Court can also consider New York's shield law, N.Y. Civ.
Rights Law § 79-h, in a federal question case. As the Second Circuit has explained, "[a]lthough
we are not bound to follow New York law, neither should we ignore New York's policy of
giving protection to professional journalists." *von Bulow by Auersperg v. von Bulow*, 811 F.2d
136, 144 (2d Cir. 1987).

[2] In contrast, *Chevron Corp. v. Berlinger*, 629 F.3d 297, 307 (2d Cir. 2011) (cited in Opp. at 3),
involved a dispute over unaired footage solicited by plaintiffs' counsel as part of a film intended
to tell his clients' story, rather than as a journalistic endeavor.

The Honorable Sarah Netburn
November 1, 2024
Page 4

566 (Sup. Ct. N.Y. Cnty. 2019) (rejecting argument similar to Plaintiffs' under New York law)

Plaintiffs mischaracterize the reporter's privilege in other ways too. They improperly assign the burden to the Non-Parties, just as they seek to do under Rules 26 and 45. Once the privilege applies, as it does here, it is the propounding party's burden to overcome it. *McCray*, 991 F. Supp. 2d at 469 (requiring that "*the requesting party show*[] the materials at issue are (1) "of likely relevance to a significant issue in the case" and (2) "are not reasonably obtainable from other available sources" (emphasis added)). This is black letter law.

They also suggest that the reporter's privilege does not apply unless the Non-Parties identify a confidential source. This too is flat wrong. The Second Circuit has repeatedly held that the reporter's privilege is *not* limited to confidential sources or materials. *See Gonzales v. NBC, Inc.*, 194 F.3d 29, 36 (2d Cir. 1998) ("We agree with NBC that the qualified privilege protecting press materials from disclosures applies to nonconfidential as well as to confidential materials.").

Instead, where Plaintiffs seek non-confidential, unpublished material, they must demonstrate that the material is "of likely relevance to a significant issue" and "not reasonably obtainable from other available sources." *Gonzales*, 194 F.3d at 36. The Opposition would have the Court believe that over a thousand hours of unaired footage are relevant in a copyright case simply because *De La Calle* discusses a genre of music. Opp. at 2. Again, Plaintiffs offer no explanation of why these references to reggaeton relate to an issue in the case, much less a significant issue. By this standard, any communication discussing Plaintiffs' works—or the broader reggaeton genre—would be relevant. This is exactly the situation that *Gonzales* cautioned against. *See* 194 F.3d at 35 (warning that allowing litigants "to sift through press files in search of information supporting their claims . . . would burden the press with heavy costs of subpoena compliance, and could otherwise impair its ability to perform its duties"); *see also McCray*, 991 F. Supp. 2d at 469-70 (refusing to grant "unfettered access to [documentary] materials" where requestors "point to no particular interview or outtake that would provide the evidence they seek"); *Shah*, 2022 WL 1422252, at *4 (defendant could not show "likely relevance to a significant issue in the case," where she alleged that the documentary investigated her case and arrest but "point[ed] to no particular interview or outtake that would provide the evidence she seeks").

Plaintiffs also cannot meet the second prong of *Gonzales*, which asks whether the *information* in the footage—not the footage itself—is available from another, non-privileged source. Plaintiffs could easily ask the interviewees about the interviews, *particularly* if those interviewees are defendants. *See In re In re Appl. to Quash Subpoena to NBC, Inc.*, 79 F.3d 346, 353 (2d Cir. 1996) (requesting party could have sought information from subject of interview and so could not claim "that pertinent material is not obtainable elsewhere just because it is included in some out-takes"); *Blum v. Schlegel*, 150 F.R.D. 42, 46 (W.D.N.Y. 1993) ("The caselaw in this area is clear. Where the source is known and can be deposed, the availability of a deposition is an alternative source that must be pursued."). They have made no effort to do so, and in fact, served these Subpoenas before seeking any discovery from the defendants.

**The Court Should Award Attorneys' Fees and Costs Because Plaintiffs Refused to Identify Records Sought Despite Repeated Requests and Refused to Adjoin an Unnecessary Deposition.** In deciding whether to award fees under Rule 45(d)(1), courts ask "[i] whether the challenged subpoena imposed an undue burden or expense on the person(s) subject thereto; and [ii] if so, what, if any, reasonable steps the subpoenaing party and its counsel took to avoid

The Honorable Sarah Netburn
November 1, 2024
Page 5

imposing such a burden." *Breaking Media, Inc. v. Jowers*, 2021 WL 1299108, at *7 (S.D.N.Y. Apr. 7, 2021). "When a subpoena should not have been issued, literally everything done in response to it constitutes undue burden or expense…." *Id.* (cleaned up).

Plaintiffs' deposition subpoenas should have never been issued. Plaintiffs have never offered any valid basis for their insistence on deposing the Non-Parties. The only purpose for the deposition was to authenticate any records Non-Parties produced. But there is no reason for imposing the burden of a deposition on a non-party where both any footage and a business records custodians' declaration would be self-authenticating. *See* Fed. R. Evid. 902(11), 803(6). To be sure, Plaintiffs also purported to demand to question Non-Parties on the "development and production of *De La Calle* and the creative decisions made regarding subject matter." But the Non-Parties' editorial judgments have nothing to do with the underlying case and whether the defendants in that case infringed Plaintiffs' copyrights (and would, in any event, be protected by the reporter's privilege). Instead, it appears that the deposition subpoena was issued for the improper purpose of forcing the Non-Parties to incur the expense of moving to quash the Subpoenas rather than simply sending a Rule 45 objection letter. Even now, despite the pending letter motion, Plaintiffs have refused to hold the deposition subpoenas in abeyance pending resolution of this matter, agreeing only to limited two- and three-week extensions. The Court should not countenance this cynical and burdensome approach to non-party discovery.

Plaintiffs' Subpoenas for documents also should have never been issued, at least not in the form they were. *Prescient Acquisition Grp.,* 2006 WL 2996645, at *3 (awarding attorneys' fees to non-parties even after requesting party agreed to limit overbroad subpoena). Plaintiffs have *never* explained why they need all the unpublished footage from *De La Calle*. Yet, that is exactly what they demanded. Further, when asked what exactly in the series was relevant to their claims in a good faith attempt to narrow the Subpoenas, Plaintiffs steadfastly refused to provide that information. Indeed, only now, more than two months later, have Plaintiffs ventured to say what information specifically is relevant to their claims—although they limit that discussion to a few sentences in an otherwise prolix letter. Plaintiffs' approach to Rules 26 and 45 in the context of this non-party discovery has, in short, been counterproductive and unduly burdensome, rather than aimed at securing "the just, speedy, and inexpensive" resolution of this dispute.[3] *See* Fed. R. Civ. P. 1. The Court should award the Non-Parties' full attorneys' fees and costs incurred.

Respectfully submitted,

*/s/ Jacquelyn N. Schell*

Jacquelyn Schell

cc:      Counsel of record, via cm/ecf

---

[3] Plaintiffs' "offer" to "lessen the burden" by reviewing the entirety of the privileged outtakes, without making any showing of need, is far from a workable solution.